### RAWLINSON *v.* SHAW.

1. PLEADING—JOINDER OF COUNTS.
   Plaintiff may in one count declare upon a contract, and seek to recover for a breach thereof, and in another count set up an arbitration and award for the same matter.

2. ARBITRATION AND AWARD—AGREEMENT TO RE-SUBMIT—WAIVER.
   An award of arbitrators is waived by a voluntary agreement of the parties to submit to a new arbitration.

Error to Kent; Adsit, J. Submitted April 7, 1898. Decided May 6, 1898.

*Assumpsit* by John W. Rawlinson against Solomon B. Shaw to recover damages growing out of the breach of a contract to publish a book. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Cutcheon & Swarthout*, for appellant.

*Rodgers, McDonald & Corwin*, for appellee.

LONG, J. Plaintiff is a superannuated Methodist minister. Defendant is also a Methodist minister, but prior to 1895 had engaged in the publishing business, and had put two books of his own upon the market, one of them entitled "Touching Incidents." In November, 1895, plaintiff called upon defendant, and explained to him his plan to produce a book containing about 40 or 50 condensed sketches of men and women who have lived useful, Christian lives. These sketches were mostly to be abridgments of biographies, giving credit to the authors, only a few of them to be original matter written by plaintiff. He desired the defendant to publish this book, and the defendant, shortly after that time, made two offers, the last of which is the following:

"I will buy the manuscript of you sufficient to make about two hundred pages. The balance we could prepare ourselves. And I will get the book out on my own responsibility, and will give you for the same one thousand copies of the children's edition of Touching Incidents, etc., board covers, which, at sixty per cent. off, would be $140; one hundred of the large edition, at sixty per cent. off, would be $40; making a total of $180. If you accept the second offer, would want you to read the proofs from the type. Now, in order to help you along, you could have part of the books soon, or as you find sale for them, and would want you to commence to prepare copy at once."

This proposition was accepted in writing on January 20, 1896. It was agreed that the plaintiff's book should be of the same size, style of binding, and make-up as Touching Incidents. It was to sell for $1 per copy, and, if illustrated, at $1.25. On February 21, 1896, plaintiff had completed 29 sketches, which he estimated to be sufficient for 200 pages, and took them to defendant for his inspection. The defendant was about to go out of the city, and, having no place to keep them with safety in his office, plaintiff left only 8 of the sketches with him, taking

the rest home.    Previous to March 5th, defendant had paid plaintiff $95.52 in books, and on that day wrote plaintiff, asking what he would take to release him from the contract.    They were unable to agree, and arbitrators were thereafter agreed upon, and certain proceedings were had, which will be treated of later.    The book has never been published.    Plaintiff brought this action to recover damages which he claims to have sustained.

The first count avers the contract, the offer of plaintiff to perform his part, the breach by defendant, and claim of damages, which, it is alleged, consist of the labor and services of plaintiff as a writer for $3\frac{1}{2}$ months, at $150 per month, and the price and value of the books and material bought by plaintiff, and other incidental expenses incurred by him in fulfilling the contract, to the sum of $100.    Damages are also claimed under this count for the difference between the cost of 1,000 books plaintiff agreed to take and buy under the contract and the price at which the plaintiff could obtain the publication of his book by other publishers, and also "for money laid out and expended in the conduct of two arbitrations in plaintiff's attempt to recover his damages resulting from defendant's breach of said contract."    The second count avers:

"And for that whereas, the said defendant, on November 24, 1896, at the city of Grand Rapids, said county, was indebted to the plaintiff in the sum of $300 upon and by virtue of an award there made by G. A. Buell, O. R. Wilmarth, J. S. Valentine, C. A. Shackleton, and W. G. Beckwith, arbitrators chosen by and between the parties, on a submission in writing theretofore made on, to wit, April 13, 1896, by the plaintiff and the defendant, to the award and determination of the said arbitrators, concerning certain matters in difference then and there depending between the plaintiff and the defendant, upon which said reference the said arbitrators then and there awarded that the defendant should pay the plaintiff the said sum of money, to wit, $300."

To these are added the common counts in *assumpsit.* The defendant pleaded the general issue, with the following notice:

"*Sir:* Take notice that, on the trial of the above-entitled cause, the defendant will give in evidence in his defense that on, to wit, the 20th day of March, A. D. 1896, the plaintiff and defendant, in writing, mutually submitted the demands set forth in the plaintiff's declara tion to the arbitration of George B. Kulp, O. E. Wightman, James N. Dayton, John M. Richens, and J. J. Kinsey, which submission was never revoked; that on the 20th day of March, 1896, at the city of Grand Rapids, county of Kent, and State of Michigan, said George B. Kulp, O. E. Wightman, James N. Dayton, John M. Richens, and J. J. Kinsey made and published their award, by which they declare that the said plaintiff should retain the value of all books received by him from said defendant at that date, and that he be given possession of the manuscript then in the hands of said defendant; that, when the award of said arbitration was announced, said plaintiff then and there demanded of said defendant that he comply with the declaration in said award, and deliver to him the manuscript in question, with which demand said defendant did then and there comply, and gave and delivered to said plaintiff the said manuscript, and settled with him in accordance with the award of said arbitration; that the said plaintiff received the said manuscript in full satisfaction and discharge of the said several premises mentioned in plaintiff's declaration, and of all the damages by the said plaintiff sustained by reason of the non-performance thereof."

The cause came on for trial before a jury in the Kent circuit court. After the opening statement by plaintiff's counsel, and before any testimony was taken, he was asked by counsel for defendant:

"You make reference to two arbitrations, which you say these parties had taken steps to set aside. Do you claim anything under either of these arbitrations?

"*A.* We do not care to announce ourselves on the thing until the proofs are in. We may or may not. It depends on the evidence in the case. * * *

"*The Court:* I think, if those two counts are allowed to stand, we are trying two cases in one."

The motion was therefore granted compelling plaintiff's counsel to elect upon which count they would proceed,

and they elected to proceed upon the first count. This ruling raises the first question presented.

The court was in error in compelling the plaintiff to elect. Upon the face of the declaration two distinct rights of action were alleged,—one upon the contract, and the other upon the award. The second count upon its face purports to disclose a distinct right unconnected with that stated in the other. *Assumpsit* could have been brought to enforce the award, which is alleged in the second count. The two counts could have been joined. Even upon the supposition that the court was advised by the opening of counsel that the second count was for the same cause of action as stated in the first count, yet we think the court was in error in compelling counsel to elect. One of the objects of inserting two or more counts in one declaration, when in fact there is but one cause of action, is to accommodate the statement of the cause, as far as may be, to the possible state of the proofs to be exhibited on the trial, or to guard, if possible, against the hazard of the proofs varying materially from the statement of the cause of action, so that, if one or more of the several counts should not be adapted to the evidence, some other of these may be so. The plaintiff has in every case a right to insert in his declaration as many counts (each one being in itself single) as he pleases. It appeared on the trial that the claimed award grew out of the same contract. If the proofs showed that the award was binding between the parties, then the plaintiff could not recover on the contract. If it turned out, however, on the trial, that the award for any reason could not be enforced by either party, the plaintiff had the right to stand upon his first count. In *Mather* v. *Day*, 106 Mich. 371, the trial judge submitted the question of the validity of the award to the jury, with the instruction that, if they found the award binding, they had nothing to do with any matters involved in the controversy covered by the contract. On appeal to this court it was said:

"We think it was proper to submit to the jury, under

the circumstances, the questions arising under the submission and award. It is evident from the finding of the jury that they were unable to compute the award from the statement furnished, and therefore disregarded the award entirely, and entered upon the consideration of the general account between the parties."

A case nearly in point to the question here is *Sadler* v. *Olmstead*, 79 Iowa, 121. It appeared that plaintiff in his first count declared upon a contract for hay sold, and sought to recover the contract price. In another count he set up an arbitration and award for the same hay. It was held that the plaintiff had the right to state his cause of action in this way in different counts.

It will be noticed that the defendant, under his plea of the general issue, gave notice of another submission and award. Upon the trial it was shown that the parties submitted their matters in difference in reference to this contract to arbitration, and that an award was made. Defendant contended that this award had been paid and satisfied; that is, that he had complied with the terms and conditions therein imposed. The award set up by the plaintiff in his declaration was what was called the "second award;" and on the trial the plaintiff offered proofs tending to show that the first award was set aside, and the second submission entered into between the parties, upon which the arbitrators found in his favor the sum of $300. Defendant then offered evidence which, it is claimed, shows that this second award was brought about by compulsion. At the conclusion of the evidence, the court directed the verdict in favor of defendant, saying:

"I am inclined to think that such submission [the second one] cannot be construed as voluntary upon the part of defendant, or as an intentional and binding waiver of the first award; and, if not, I am inclined to think that such award [the first one] would be a good defense to the cause of action sued upon by the plaintiff."

We think the question whether the second award was obtained by duress was a question of fact for the determination of the jury. It cannot be said that the evidence

was so clear upon that question that the court should direct the verdict. If the agreement for the second award was fairly entered into, and the defendant signed it voluntarily, the effect was to waive the first award, and no action would lie upon it, and it could not be set up here as a defense to the plaintiff's claim under the contract. *Rollins* v. *Townsend*, 118 Mass. 224; *Burnside* v. *Potts*, 23 Ill. 411; *Eastman* v. *Armstrong*, 26 Ill. 216. If the second award was found to be valid, the plaintiff would be entitled to recover the amount of that award. If neither of the awards was valid and binding, the plaintiff would be entitled to recover under his contract whatever his legitimate damages might prove to be.

We think upon a second trial all the matters will be properly disposed of, and that no further discussion of the case is necessary.

The judgment must be reversed, and a new trial awarded.

The other Justices concurred.